IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                   Crim. No. 23-146-WJ

JOSEPH GADMAN,

    Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

Friday the thirteenth of January 2023 proved to be an unlucky day for Defendant Joseph Gadman ("Defendant"). That afternoon, Defendant traveled two and a half hours from Tucumcari to Albuquerque – a 160-mile trip – with KitKats, non-latex condoms, and $60 in cash. The KitKats and condoms were meant for the two minor girls – ages eight and twelve – that he planned to have sex with and the $60 in cash was for their mother as payment for the planned rape. Unfortunately for Defendant, he arranged this deal with an undercover agent from the Federal Bureau of Investigation ("FBI"), and the two minor girls he was so eager to sexually assault that day were not real.

The United States of America submits this Sentencing Memorandum in support of the parties' Rule 11(c)(1)(C) plea agreement. For the following reasons, it encourages the Court to accept the parties' agreement and sentence Defendant to a term of imprisonment of 10 years. Such a sentence is appropriate under the circumstances, fulfills the sentencing goals laid out in 18 U.S.C. § 3553(a), and is in the public interest.

**I.    LEGAL STANDARD**

In imposing a sentence that is sufficient but not greater than necessary, the Court must consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

## II.   ARGUMENT

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

This investigation began in mid-December 2022, when an FBI undercover agent engaged in a group chat on Fetlife.com, a social networking website that caters to individuals with sexual fetishes. This website is also commonly known as a hub for child sexual abuse material. The undercover agent presented as a mother with a husband and three young children – ages twelve, eight, and five – and represented that the family was "open" and interested in connecting with like-minded individuals. On January 4, 2023, a user with the screen name "Gadmanj40" sent the undercover agent a private message indicating his interest. The two began exchanging messages about the undercover agent's "family."

The conversation transitioned from the internet to text message, with Gadmanj40 providing a phone number that the FBI identified as Defendant's phone number. Between January 10th and January 13th, Defendant and the undercover agent exchanged a few hundred text messages.

Defendant initiated the text conversation by writing "Hey it's Gadmanj from Fetlife" and almost immediately asking "So tell me what y'all wanting." Defendant expressed that he "had fantasies about [a] family affair." The undercover agent told him the ages of the children; Defendant asked if they were girls or boys and stated that he has "always been interested in watching mom and daughter play or sister and brother play."

To the extent that Defendant's motivations were unclear at this stage in the conversation, the United States highlights the following excerpt for the Court:

Undercover Agent:   Can I ask you something without you getting offended?

Defendant:          Sure

Undercover Agent:   Do children turn you on?  Bc I get the cents that ur looking for the more traditional porn scenario and I'm not trying to waist my time or yours

Defendant:          Of course they do (emphasis added)

He offered, "I could play with your girl." The undercover agent clarified that she had two girls – twelve and eight – and he said he wanted "both." When the undercover agent asked what he wanted to do with the two girls, he responded: "Have them suck me and caress them."

Then the conversation around logistics to meet in person began. Defendant stated that he lived in Tucumcari, New Mexico, and he could be in Albuquerque in the afternoon or evening (of January 13th). Defendant agreed to wear a condom and asked: "So the girls are they train to know what to do or how to please have y'all don't this before[?]" He also explained that: "I was gonna get to play with a 15 year old with her mom's permission. Her mom wanted me to pop her cherry." He claimed that didn't happen, but "i been wondering about younger."

Defendant further explained "So im one of those that if the parents give the permission then im ok with it, or what ever the kid is comfortable with. But I make sure it's not a trap. Cause

3

I don't won't anyone in trouble[.]" He said: "I can bring snacks like KitKats if they want anything like that" and offered to pay $60. He also asked: "So I know you want me to wear a condom what if the oldest wants to do more then put her mouth it like ride it." The undercover agent requested latex-free condoms, and Defendant quickly sent a picture of latex-free condoms. The day of the planned meeting, Defendant also wrote the undercover agent to inform her that he was excited and that "I shaved down below."

On January 13th, FBI agents were monitoring Defendant's real-time cell phone location data, which corroborated his text messages that he was indeed traveling to Albuquerque. As expected, he did arrive at the pre-determined meeting location at the agreed-upon time. He had $60 on his person, and latex-free condoms and KitKats in his truck. The FBI was waiting for him and swiftly took him into custody. Post-*Miranda*, Defendant admitted he was "Gadmanj40" and that he was the sole user of the cell phone that was used to text the undercover agent. He claimed, contrary to his hundreds of text messages, that he was at the pre-determined meeting location only to use the restroom and that he did not have a sexual interest in the fictitious children.

In terms of Defendant's history and characteristics, he is a 42-year-old male with minimal criminal history. His upbringing is unremarkable and was seemingly stable, leaving the Court with no documented reason as to why he would attempt to engage in such reprehensible conduct.

**B. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant**

A sexual crime represents one of the greatest harms one person can commit against another. Here, thanks to the FBI undercover agent, Defendant was unable to perpetuate such a harm against a real minor. A sentence of 10 years is appropriate under the circumstances, will reflect the

seriousness of this offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect real minors in the community at large from Defendant's further crimes.

### C. The kinds of sentences available, the sentencing range established for this defendant, and the need to avoid sentencing disparities

A violation of 18 U.S.C. § 2422(b) carries a mandatory minimum penalty of 10 years imprisonment up to life. The Pre-Sentence Report indicates that his advisory guidelines range, factoring in acceptance credit, is 168 to 210 months. Doc. 54 at ¶ 68. The United States was agreeable to the plea agreement for two reasons: (1) Defendant has no verifiable criminal history involving minors, and (2) a search of Defendant's cell phone yielded no child sexual abuse material. Absent those two factors, the United States would not have entered into this agreement. However, under the circumstances of this case, it encourages the Court to accept the plea agreement.

### III. CONCLUSION

For these reasons, the United States encourages the Court to accept the parties' agreement and sentence Defendant to a term of imprisonment of 10 years.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

/s/
JAYMIE L. ROYBAL
Assistant United States Attorney
P.O. Box 607
Albuquerque, N.M. 87103
(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Dennis Candelaria, to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on June 6, 2024.

/s/
Jaymie L. Roybal
Assistant United States Attorney